

United States Attorney
District of Maryland
Northern Division

---

Rod J. Rosenstein
United States Attorney

P. Michael Cunningham
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4884
MAIN: 410-209-4800
FAX: 410-962-3091
TTY/TDD: 410-962-4462
michael.cunningham@usdoj.gov

January 30, 2013

Shaun Owens, Esquire
Schlachman, Belsky & Weiner, P.A.
300 East Lombard Street, Suite 1100
Baltimore, Maryland 21202

_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

JAN 3 0 2013

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

    Re:    *United States v. Ryan Lohr*
           Criminal No.:  _JKB-13-0031_

Dear Mr. Owens:

        This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to RYAN LOHR ("Defendant") by the Civil Rights Division of the Department of Justice ("United States"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by January 8, 2013, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

        1.    The Defendant agrees to plead guilty to a Criminal Information, which will charge him with Conspiracy, in violation of 18 U.S.C. §371. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

Elements of the Offense

        2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which the United States would prove if the case went to trial, are as follows:

           A.    That two or more persons agreed to commit an offense against the United States, as charged in the information;
           B.    That RYAN LOHR was a party to or a member of that agreement;
           C.    That RYAN LOHR joined the agreement or conspiracy knowing of its objective to obstruct justice and destroy evidence, and intending to join together with at least one other alleged conspirator to achieve

that objective; and

D.   That at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.

## Penalties

3.   The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: Imprisonment up to five (5) years, including a maximum term of three (3) years supervised release, and maximum fine of $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.   The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.   If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the United States, and the Court all agreed.

b.   If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.   If the Defendant went to trial, the government would have the burden

---

[1]   Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

        d.       The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify.  If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.       If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.       By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case.  Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.       If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.       By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.  The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status.  Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

        5.       The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take

into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.     The United States and the Defendant understand, agree and stipulate to the the Statement of Facts set forth in Attachment A hereto, which the United States would prove beyond a reasonable doubt.

The United States does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct.  The United States agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty.  The United States may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, the United States, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

7.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

## Obligations of the United States

8.     At the time of sentencing, the United States will recommend that the Court impose a guideline sentence.

9.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Waiver of Appeal

10.     In exchange for the concessions made by the United States and the Defendant in this plea agreement, the United States and the Defendant waive their rights to appeal as follows:

a)     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b)     The Defendant and the United States knowingly waive all right,

pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c)   Nothing in this agreement shall be construed to prevent the Defendant or the United States from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d)   The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the United States or any investigating agency.

## Obstruction or Other Violations of Law

11.   The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then the United States will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, the United States will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, the United States will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because the United States is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

12.   The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the

Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept the United States's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

13.     This letter supersedes any prior understandings, promises, or conditions between the United States and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and the United States other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

THOMAS E. PEREZ
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

By:

FORREST CHRISTIAN
Special Litigation Counsel
Civil Rights Division

By:

SANJAY PATEL
Trial Attorney
Civil Rights Division

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_____
Date

RYAN LOHR

I am RYAN LOHR's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_____
Date

SHAUN OWENS

7



JAN 3 0 2013

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
DEPUTY

**PLEA AGREEMENT**

**ATTACHMENT A**

**FACTUAL BASIS**

The United States of America and the defendant stipulate and agree that the following facts are true, and that the United States could prove these facts beyond a reasonable doubt:

Defendant RYAN LOHR conspired with other Roxbury Correctional Institution (RCI) officers to commit offenses against the United States, including obstruction of justice offenses in violation of Title 18, United States Code, Sections 1512 and 1519. Defendant LOHR admits that this conspiracy was in violation of Title 18, United States Code, Section 371.

On or about March 9, 2008, defendant LOHR was employed at RCI as a Correctional Officer. Upon joining RCI, defendant LOHR was advised by RCI officers that if an inmate hit an RCI officer, officers would use force to punish the inmate. RCI officers also advised that, in using force to punish the inmate, they intended to injure the inmate. Defendant LOHR understood that this practice of using force to punish and injure inmates was unlawful.

On or about March 9, 2008, defendant LOHR learned during roll call that inmate KD had been moved to the Administrative Segregation Intake Area (ASIA) because inmate KD had assaulted an RCI officer from a previous shift.

Officer TH, who rarely, if ever, was assigned to work in ASIA, learned that he had been assigned to ASIA and complained to a supervisor about the assignment. The supervisor explained to TH that, we got one in ASIA we need you to take care of.

Officer TH asked defendant LOHR, who had been assigned to another post in the same building as ASIA, to come to ASIA. Defendant LOHR walked to ASIA, where he saw Officers TH, LK, MM, RM, and DN. Defendant LOHR understood that the officers had gathered in ASIA to assault inmate KD in retaliation for KD's assault on an officer, and that the officers were waiting for defendant LOHR to open the cell door. Defendant LOHR opened the door to inmate KD's cell.

Defendant LOHR watched from the cell door as officers TH, LK, MM, RM, and DN entered the cell and beat inmate KD. Officers used their fists and feet to strike inmate KD on his head, face, and body with fists and kicks. Defendant LOHR saw that inmate KD was lying on the ground when the officers beat him. Defendant LOHR did not observe inmate KD act in a manner that warranted any use of force upon him by the officers. Defendant LOHR recognized that the force the officers used on inmate KD was unjustified and unlawful, and was intended to injure and punish inmate KD for his prior assault on a RCI officer. Defendant LOHR observed that inmate KD had been injured by the unjustified, unlawful use of force by TH, LK, MM, RM, and DN.

Defendant LOHR stood by the door to inmate KD's cell and watched officers assault inmate KD. Defendant LOHR did not intervene or otherwise attempt to prevent these officers from assaulting inmate KD. During the assault, supervisor JH arrived in ASIA. Supervisor JH also did nothing to stop the assault.

Shortly after officers TH, LK, MM, RM, and DN assaulted inmate KD, supervisor ES arrived in ASIA. Supervisor ES located the surveillance recording tapes and said that he was, taking care of the issue. Supervisor ES waved what appeared to be a magnet over several surveillance tapes. Defendant LOHR understood this to be an effort by supervisor ES to erase surveillance footage. Supervisor ES then hid the device in the drop-ceiling.

Although inmate KD had some visible injuries to his face prior to the dayshift assault, inmate KD appeared to have additional injuries after the assault by TH, LK, MM, RM, and DN.

After the assault, defendant LOHR directed others to clean up the blood in inmate KD's cell. In so doing, defendant LOHR sought to conceal and cover up evidence of the dayshift's assault on inmate KD, with the intent to impede or obstruct any investigation into the incident.

Inmate KD was escorted to the medical dispensary to receive treatment for his injuries, and later was taken to the hospital. The supervisor who had previously told Officer TH that, we got one in ASIA we need you to take care of, then told defendant LOHR and TH not to write a report about inmate KD or his injuries.

In the aftermath of the assault on inmate KD, defendant LOHR met with officers TH, LK, MM, RM, and DN at RCI to discuss the investigations into the assault on inmate KD. Defendant LOHR and the officers agreed to provide false statements to the investigators about their knowledge of and participation in the assault on inmate KD.

Defendant LOHR and the other officers agreed that they would falsely claim that they had no knowledge of how inmate KD got injured, and that they would falsely deny having participated in the assault. Defendant LOHR knew that these claims were untrue.

At one meeting, Officer TH said that all of the officers should tell investigators that no one saw, heard, or did anything to inmate KD, and that it must have been correctional officers from the prior shift who assaulted inmate KD. Defendant LOHR advised the officers to tell investigators that they did not see defendant LOHR in ASIA.

When defendant LOHR met with RCI and Maryland State Police (MSP) investigators regarding the incident involving inmate KD, defendant LOHR concealed that he and his co-conspirators were involved in a cover-up of the assault on inmate KD, and provided investigators with false and misleading statements about the beating. Among other lies, defendant LOHR falsely told RCI and MSP investigators that he did not witness anyone assaulting or beating Davis. Defendant LOHR also falsely denied that he, or any other RCI officers, did anything to injure inmate KD during their shift on March 9, 2008. After providing investigators with a false statement, defendant LOHR communicated with another officer who was not involved in the beating. Defendant LOHR instructed this officer not to tell investigators that he, defendant LOHR, was in the ASIA at the time the other officers were.

RYAN LOHR
Defendant

1-8-13
Date